UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BRIAN GRAHAM,

    Petitioner,

-vs-                                              Case No. 8:08-cv-2082-T-17TGW

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.
_____

## O R D E R

Before this Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by BRIAN GRAHAM (hereinafter referred to as Graham), a Florida prisoner. The petition attacks Graham's convictions for one count each of aggravated kidnaping of a child, sexual battery of a victim under 12 years of age, lewd and lascivious act on a child, and burglary of a conveyance with an assault or battery. The convictions arose from charges filed in the Thirteenth Judicial Circuit in Hillsborough County, Florida, in state circuit case number 99-10666.

### PROCEDURAL HISTORY

Charges were originally filed against Graham on July 9, 1999. (Exh 26: Vol. 1: R 38-43). The Information was subsequently amended several times until October 10, 2000, when the State filed an Amended Information charging Graham with aggravated kidnaping of a child under 13 years of age (Count One); sexual battery of a child victim less than 12 years of age (Counts Two and Three); lewd and lascivious act on a child (Count Four); and

burglary of a conveyance with an assault or battery (Count Five). (Exh 26: Vol. 1: R 83-88). On October 10, 2000, the case proceeded to jury trial before the Honorable Jack Espinosa, Circuit Judge. Graham was represented by Assistant Public Defenders Ursula Richardson and Jeanine Cohen. The jury found Graham guilty as charged on all five counts. (Exh 26: Vol. 1: R 143-144).

On November 8, 2000, a sentencing hearing was held. (Exh 26: Vol. 6: T 777-793). At that proceeding, the court granted the defense motion for a judgment of acquittal notwithstanding the jury's verdict, and dismissed Count Three, one of the two counts of sexual battery of a child under 12. (Exh 26: Vol. 6: T 790). The court determined Graham to be a sexual predator and adjudicated him guilty. The court then sentenced Graham to life in prison on Counts One, Two, and Five, and to fifteen years in prison on Count Four. Counts Two and Four are running concurrently, while the life sentence on Count One is running consecutively to Counts Two and Four. The life sentence on Count Five is running consecutively to all other counts. (Exh 26: Vol. 1: R 150-161).

## Direct Appeal

Graham pursued a direct appeal. Attorney Eric J. Gottlieb, the Special Assistant Public Defender appointed to represent Graham on appeal, filed an initial brief (Exhibit 1) raising one issue:

> THE TRIAL COURT REVERSIBLY ERRED BY ADMITTING - IN THE ABSENCE OF A WAIVER AND OVER DEFENSE OBJECTIONS - PRIVILEGED COMMUNICATIONS BETWEEN MR. GRAHAM AND HIS WIFE.

The State filed an answer brief. (Exhibit 2). May 17, 2002, in Case No. 2D00-5490, the Second District Court of Appeal filed a per curiam silent opinion affirming Graham's

judgment and sentence. (Exhibit 3). *Graham v. State*, 819 So. 2d 764 (Fla. 2d DCA 2007)[table]. The mandate was issued on June 11, 2002. (Exhibit 4).

On July 27, 2002, Graham filed a motion to define or clarify sentence pursuant to Rule 3.700(b) of the Florida Rules of Criminal Procedure. (Exhibit 5). Graham requested that the court conform the Criminal Punishment Code sentencing scoresheet to reflect the court's oral pronouncement of "concurrent" which would make the scoresheet reflect "life plus 15" rather than "life plus 45." The court summarily denied the motion in an order issued September 11, 2002. (Exhibit 6). The court's order reads:

> THIS MATTER is before the Court on Defendant's Motion to Define or Clarify Sentence, filed August 2, 2002. In his Motion, Defendant moves the Court to correct the listed maximum penalty on his November 8, 2000 Scoresheet in order to conform it with his official, orally pronounced judgment and sentence. However, an entry made on a sentencing scoresheet is not the official sentence given to a defendant. If the proper sentence is reflected on the official judgment and sentence, there is no prejudice to a defendant by virtue of a scoresheet entry. Here, after considering Defendant's Motion, the court file, and the record, the Court finds Defendant's official judgment and sentence documents reflect the proper sentence pronounced by the Court, and that there exists no reason to amend the scoresheet to ensure proper sentencing. (See Judgment and Sentence, Scoresheet, attached).

Exh 6: Order Denying Motion to Define or Clarify Sentence.

Graham appealed the adverse ruling. He filed an initial pro se brief on November 19, 2002. (Exhibit 7). Because of the summary nature of the proceeding, the State was not required to file an answer brief and did not do so. On January 8, 2003, in Case No. 2D02-4839, the appellate court filed an unwritten per curiam opinion affirming the trial court's ruling. (Exhibit 8). *Graham v. State*, 840 So. 2d 234 (Fla. 2d DCA 2003)[table]. The mandate was issued on January 30, 2003. (Exhibit 9).

Rule 3.850 Motion for Postconviction Relief

On January 20, 2004, Graham, through private counsel, James T. Miller, Esquire, filed a Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850. (Exhibit 10). Graham raised four claims of ineffective assistance of trial counsel. On February 8, 2005, Graham's attorney filed an amended Rule 3.850 motion, adding a fifth ground of ineffective assistance of trial counsel. (Exhibit 11). In all, the motions raised the following claims:

> 1. Ineffective assistance of counsel for failing to request a Frye hearing on whether DNA testing was admissible; whether the scientific theory and laboratory procedures were reliable and generally accepted in the scientific community;
>
> 2. Ineffective assistance of counsel for failing to object to expert witnesses testifying to matters (1) not the subject of expertise testimony, or (2) beyond the expertise of the witness;
>
> 3. Ineffective assistance of counsel for failing to object to the State's comments on Defendant's right to remain silent and not testify at trial and the State offered a partial opinion on whether defendant's confession was voluntary;
>
> 4. Ineffective assistance of counsel for failing to object to improper, irrelevant character evidence; the State admitted evidence that Defendant stated to the police that he wears women's clothing;
>
> 5. Ineffective assistance of counsel for failing to call alibi witnesses.

On May 23, 2005, the postconviction court issued an order directing the State to respond to all five grounds. (Exhibit 12). The State filed its response on June 30, 2005, urging the court to summarily deny all claims. (Exhibit 13). On March 27, 2007, the court issued an order summarily denying grounds one through four of the Rule 3.850 motion, and granted a hearing on ground five pertaining to counsel's alleged failure to call an alibi witness. (Exhibit 14).

An evidentiary hearing was held before the Honorable Anthony K. Black, Circuit Judge, on July 23, 3007. (Exhibit 15). The court heard testimony from Petitioner Graham, former trial counsel Ursula Richardson, and witness Robert Barker. Graham filed a written closing argument on August 10, 2007 (Exhibit 16), and the State filed a written closing argument on August 15, 2007. (Exhibit 17). On September 26, 2007, the court issued its final order denying the motion for postconviction relief. (Exhibit 18). Graham appealed the orders denying relief. His postconviction counsel, Attorney James T. Miller, filed an initial brief (Exhibit 19) on Graham's behalf, raising two issues:

Issue I

THE TRIAL COURT ERRONEOUSLY DENIED THE RULE 3.850 FLA. R. CRIM. P. MOTION ON THE GROUND OF FAILURE TO CALL AN ALIBI WITNESS: THE COURT'S FACTUAL FINDINGS WERE NOT SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE.

Issue II

THE TRIAL COURT ERRONEOUSLY DENIED AN EVIDENTIARY HEARING ON THE CLAIMS OF IMPROPER DNA EVIDENCE AND EXPERT TESTIMONY ON IT AND IMPROPER BAD CHARACTER EVIDENCE AGAINST APPELLANT.

The State filed its answer brief. (Exhibit 20). Graham then filed a reply brief. (Exhibit 21). On August 29, 2008, in Case No. 2D07- 4912, the state appellate court filed a per curiam unwritten opinion affirming the lower court's denial of postconviction relief. (Exhibit 22). *Graham v. State*, 4 So. 3d 1231 (Fla. 2d DCA 2008)[table]. Graham filed a motion for rehearing, clarification, or certification. (Exhibit 23). The motion was denied by the appellate court on September 25, 2008. (Exhibit 24). The court issued the mandate on October 15, 2008. (Exhibit 25).

The Present Petition

Graham, through his attorney, filed his original § 2254 petition on October 20, 2008. (Doc. 1). Pursuant to Graham's motion to amend the petition, this Court dismissed the original petition without prejudice on November 4, 2008. (Doc. 7). Graham's counsel filed the amended petition on December 1, 2008. (Doc. 9). The amended petition presented four grounds for relief. However, in his reply to the response, **Graham abandoned ground two**.

**The three remaining grounds are**

GROUND ONE

Trial counsel was ineffective for failing to request a Frye hearing on DNA evidence used against Petitioner.

GROUND THREE

Trial counsel was ineffective for failing to object to improper expert testimony.

GROUND FOUR

Trial counsel was ineffective for failing to object to improper character evidence about Petitioner's cross-dressing.

STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).

Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

DISCUSSION

GROUND ONE

Graham contends his trial counsel was ineffective for failing to request a *Frye*[1] hearing on DNA evidence used against him at trial. Graham properly raised this claim in ground one of his Rule 3.850 postconviction relief motion. The state court's summary denial of Graham's argument is objectively reasonable and Ground One will be denied by this Court. The state postconviction court's order reads:

> In ground 1, Defendant claims that counsel was ineffective for failing to request a *Frye*[2] hearing as to whether DNA testing evidence was admissible, and whether the scientific theory and laboratory procedures were reliable and generally accepted in the relevant scientific community.

---

[1] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

[2] *See Butler v. State*, 842 So. 2d 817, 828 (Fla. 2003) (noting that scientific evidence is admissible if it meets the *Frye* test by showing that the scientific principle/methodology is generally accepted in the scientific community.

> Defendant also alleges that counsel was ineffective for failing to object to the introduction of the DNA evidence based upon the State's failure to establish its acceptance in the scientific community.
>
> In its response, the State contends that Defendant fails to demonstrate that the DNA test results were unreliable, that the testing methods or database was not generally accepted in the scientific community, or that the DNA evidence would not have been admitted but for counsel's failure to request a hearing. The State claims that the record establishes that the DNA analysis in this case was reliable, as the testimony by witnesses Petro Tsingelis, Melissa Suddeth, and Dr. Martin Tracey supported the reliability of the testing procedures used. (See State's Response, pages 6-7; Trial Transcript, pages 518-550, 570-601, 625-633, attached).
>
> The State argues that Defendant fails to establish that any of the DNA evidence would have been excluded had counsel requested such hearing. Finally, the State claims that even if the DNA evidence had been excluded, Defendant cannot demonstrate that the outcome of trial would have been different, given the evidence presented during trial to support the identification of Defendant as the perpetrator--including eyewitness descriptions and identifications, admissions by Defendant, fiber analysis, cell phone evidence, and evidence corroborating Defendant's admissions. (See State's Response, pages 9-14, attached).
>
> Upon review of the State's Response, the Court finds that Defendant fails to demonstrate, pursuant to *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), that counsel's performance with regard to ground 1 was deficient or caused Defendant to suffer prejudice, in light of the witness testimony supporting the reliability of the DNA testing. Defendant also fails to show how the outcome of trial would have been different had counsel requested a *Frye* hearing regarding the DNA evidence, given the totality of the evidence presented at trial. Therefore, Defendant cannot demonstrate, pursuant to Strickland, that counsel was deficient for failing to request a *Frye* hearing and that Defendant suffered prejudice as a result. As such, Defendant is not entitled to relief and ground 1 is denied.

Exh 14: March 27, 2007, Order Granting an Evidentiary Hearing, and Order Denying in Part, Motion for Post-Conviction Relief at pages 1-2.

The postconviction court correctly determined Graham failed to establish either the deficiency of counsel's performance or the existence of prejudice under the *Strickland* test. Graham did not show that the DNA testing methods or database utilized at his trial were

not generally accepted in the scientific community, or that the DNA evidence would not have been admitted but for counsel's failure to request a *Frye* hearing. More important, even if the DNA evidence had been excluded, Graham would have been found guilty based on the overwhelming amount of other evidence adduced at trial. In its response to the state postconviction court's order to show cause, the prosecutor summarized the evidence adduced at trial, aside from the DNA evidence, which supports the jury's guilty verdicts:

> Merle Friedman, testified that she witnessed a girl screaming and being put in a truck outside the Nature's Harvest grocery store. Ms. Friedman testified that she saw the man clearly, gave a physical description, and identified the Defendant during the trial. She also stated that she observed the perpetrator driving a red pickup truck. (T. 159 — 176).
>
> Brittney Cassidy described seeing a girl being pulled from an SUV and put into a red pickup truck. The girl was struggling with the man. She described the perpetrator and his clothing, but was unable to see his face. She observed the perpetrator wearing a blue speedo bathing suit, a white shirt and no shoes. (T. 176 — 186). In addition to describing the criminal acts that occurred, the victim identified the defendant in court. (T. 209). She described the perpetrator having a purple with white lace skirt. (T. 201 - 202, 221 - 222). She described the perpetrator putting a black bra over her eyes when he was licking her privates. (T. 203). She thought he got the bra from the floor of the truck. (T. 204). She said the man was not wearing any shoes. (T. 220). The sexual assault took place in the parking lot of a Red Roof Inn in Brandon. (T. 20 8). She said that after the sexual assault, the man drove her to a location behind a Kash & Karry grocery store and dropped her off, telling her to walk slowly. (T. 204). This Kash & Karry was about 15 minutes from the Red Roof Inn parking lot where the sexual assault occurred. (T. 204, 216 — 217). She walked to the front of the store and told a lady she got kidnapped, and the lady took her to a police car which was outside the Kash & Karry. (T. 205).
>
> The victim's mother described seeing a man in a vehicle parked next to hers at Alessi's Bakery. The man was wearing a bra. This occurred immediately prior to her driving to the grocery store, which was nearby. She went inside the store to pay for and pick up groceries that she had set aside earlier, and when she came out of the store learned that her daughter had been taken. (T. 223 — 239).
>
> Jerry Cirino, an expert in micro-analysis, testified that fibers from vacuum sweepings of the Defendant's truck were consistent with material

from the victim's bathing suit, and fibers from a bag recovered from the Defendant's truck were consistent with the victim's bathing suit. The fibers from the girl's bathing suit were different from the fibers from a men's bathing suit recovered from the Defendant's residence. Therefore the fibers from the Defendant's vehicle that were consistent with the victim's bathing suit did not come from the Defendant's bathing suit. (T. 460 — 466).

Cell phone records and testimony revealed that a telephone call was made from the Defendant's cell phone on the day of the offense at 5:18 p.m. This call originated from a location within a two mile radius of the cell tower located at 5907 Martin Luther King Boulevard. The area of & Columbus (the location of the Kash & Karry grocery store where the victim was dropped off by the perpetrator) was included within the area from which the cell phone call originated. (T. 561- 568).

Officer Rick Sementelli was the police officer that recovered the victim. He testified that he was parked at the Kash & Karry on 50th Street when the victim came up to him at 5:21 p.m. (T. 439—441).

Several law enforcement officers from different police departments testified to incriminating statements made by the Defendant. Det. Darren Berberett of the Temple Terrace Police Department testified that the Defendant admitted to wearing women's clothing. He denied being a cross-dresser, per se. He admitted he had taken the girl and was remorseful. He said he wished he could take it back. (T. 268 — 270).

Det. Michael Collins of the Temple Terrace Police Department testified that the Defendant admitted to wearing women's clothing while driving his vehicle. He said he allows people to see him in women's clothing to get a reaction. He said he had thrown the women's clothing away. Collins overheard the Defendant tell detectives from the Tampa Police Department that he was sorry for doing it and that he wished he could turn back time and not do it. He described how he arrived at the area where he took the girl. (T. 285 —289).

The Defendant made statements to Det. John Tindall and Det. J.D. Yaratch of the Tampa Police Department. Det. Tindall testified that the Defendant admitted to wearing women's clothing. He said he worked that day at a furniture store and left at about 4 o'clock. Det. Tindall estimated the store was about 3 miles from the grocery story [sic] where the victim was taken. Tindall testified that the Defendant said he didn't mean to hurt the girl. He initially saw her at Alessi's Bakery in a vehicle and her mother returned to the vehicle. He followed them to Nature's Harvest grocery store. He grabbed her out of the truck and then she was in his vehicle. He drove on the interstate, and didn't know where he went. He thought about stopping at a police department and delivering the victim to the police. He couldn't believe what

he was doing. He had the victim remove her bathing suit bottom and he put on a white skirt and fondled her vaginal area. He put his finger inside her. He denied performing oral sex on her. He drove her to a store and dropped her off there. (T. 308 — 321).

Det. John Yaratch testified that he received a description of the perpetrator from the victim, and based on his observations of the Defendant, the victim's physical description matched the Defendant. (T. 367— 379). Det. Yaratch testified that the Defendant admitted that he first saw the victim at Alessi's Bakery. He saw her in her bathing suit and became infatuated with her. The girl and her mother got back in their vehicle and he followed them as they drove from the bakery to Nature's Harvest grocery store. He parked his vehicle next to theirs at the grocery store. He walked up to the victim's vehicle to look at her, and the next thing he knew he was pulling her in his vehicle and driving off. He thought about dropping her off at a police station, but did not do that. He went somewhere and parked, and had her remove her bathing suit bottom. He put a white lacy dress on. He touched the girl with his finger on her vagina. He denied performing oral sex on her. He got back in the vehicle and drove to the area of Kash & Karry near 50th Street and Columbus. He saw a police car there. He told the victim to get out, walk away and don't look back. He threw the clothes from his truck into a dumpster. (T. 410— 412).

A portion of the Defendant's interview with Det. Tindall and Det. Yaratch was recorded on tape. This portion was played for the jury. On the audio tape the Defendant admitted to wearing women's clothing, including a skirt and a bra. He admitted to having a black bra and a white bra. He admitted that he had a red burgundy pickup truck. (T. 390 — 391). When it appeared to the detectives that the defendant did not want to make any additional statements on tape, the defendant was asked if he wanted the tape turned off. After he responded that he did want the tape turned off, the recording stopped and the interview continued off tape. (T. 380— 381).

The Defendant's wife, Felicia Graham, testified that she was aware of the abduction of the girl from the Nature's Harvest store from watching the news on television. She knew her husband had an interest in women's clothing but did not know that he had an interest in wearing them. (T. 475). Her husband worked on weekends, and his work hours were from 8 o'clock to 4 o'clock. (T. 473). She had a telephone conversation with the Defendant after his arrest, and this conversation was recorded. She verified that the audio tape of the conversation that was introduced into evidence was a fair and accurate recording of the conversation. During this conversation the Defendant admitted to her that he took the girl. He said that he didn't know why, something triggered, something just clicked. He said he did not use anything as bait, he just took her. After he took her he wanted to put her back. When asked if it occurred on Saturday, he said that it had, and that it

-11-

was him on the television. When asked what time be left work that day, he said he did not recall, guessed 5:30 or 6 o'clock, and said he did not know. When told that the police had searched his truck, he said he had thrown everything away. He admitted he had a problem and said he should have asked for help. He acknowledged that the victim was scared to death. He said that he stopped at the bakery and followed them to the store and things just happened. He said he was wearing a skirt he picked up at the Salvation place, and said that maybe he wanted to have somebody laugh at him. He said that the police were treating him well. (T. 478 — 499).

Although it was highly probative of guilt, the DNA evidence in this case was cumulative of other evidence identifying the Defendant as the perpetrator. Even removing the DNA evidence from consideration, the evidence clearly established that the Defendant was the perpetrator of the crimes. Therefore, there is no reasonable probability that the outcome of the trial would have been different if the DNA evidence had been excluded. Exh 13:

State's Response to Defendant's Motion for Postconviction Relief at pp. 9-14.

The DNA evidence was admissible. Even if this evidence had been excluded, the result of the trial would have been the same. Consequently, Graham cannot demonstrate ineffective assistance of counsel as to either the performance or prejudice prong of *Strickland*. Therefore, the state court decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and Ground One will be denied.

## GROUND TWO

Ground two was abandoned in the reply to Respondent's response. (See Doc. 19, p. 4).

## GROUND THREE

Graham argues trial counsel was ineffective for failing to object to improper expert testimony. As factual support, Graham states:

Counsel failed to object to expert witnesses testifying to matters beyond the expertise of these witnesses. The State's witnesses testified Petitioner contributed to a DNA mixture found on the victim's bathing suit. The State's witnesses also testified the DNA tests they used could not exclude Petitioner

as a contributor. Therefore, the opinions of the State's witnesses were beyond their expertise.

§ 2254 petition at p. 9.

The same claim was raised in ground two of Graham's Rule 3.850 motion, and properly denied by the state postconviction court without a hearing. The order states in pertinent part:

> In ground 2, Defendant claims that counsel was ineffective for failing to object to expert witnesses testifying to matters (1) not the subject of expert testimony, and (2) beyond their expertise. Specifically, Defendant alleges that witness Petros Tsingelis speculated that STR (Short tandem repeat) DNA testing was capable of producing a more definitive result than PCR (Polymerase chain reaction), as STR was more sensitive than PCR testing. Defendant claims that because this witness stated that the PCR test he used could not determine whether Defendant was a contributor to the common DNA material, it implied that if he had performed the STR testing, then it would have included Defendant. Defendant also alleges that witness Melissa Suddeth's testimony was speculative, as she testified that the DNA evidence was "consistent with" Defendant and the victim, rather than "matched" the Defendant or victim, and that her findings were based on the law enforcement community database, rather than the general scientific community.
>
> In its Response, the State argues that Petro Tsingelis was qualified as an expert in serology and DNA identification, and was therefore qualified to discuss the relative strengths and weaknesses of the two different testing techniques. The State contends that his comment that STR testing was more sensitive than PCR was relevant to explain the differences in the types of testing to the jury. Furthermore, the State asserts that Defendant fails to provide any legal basis or authority for why this testimony was improper, as it was based on the witness's knowledge and experience. The State also points out that Melissa Suddeth's testimony established that STR testing was more sensitive than PCR, and that as such, Defendant fails to demonstrate prejudice.
>
> With regard to witness Melissa Suddeth, the State argues that Defendant fails to cite any authority requiring a witness to establish general acceptance in the scientific community prior to rendering an opinion, or that this witness should have used the term "match" instead of "consistent with." The State asserts that this witness testified that the DNA profile was consistent with the DNA found on the victim's bathing suit bottom, and whether or not the term "match" was used is irrelevant to the admissibility of the testimony or evidence. The State also argues that the witness's testimony

was based on her knowledge and experience, as well as the database from which her calculations were derived, and as such, Defendant cannot establish prejudice.

       The Court agrees with the State. To show that counsel was ineffective for failing to object, a defendant must show, under *Strickland*, that counsel had no excuse for overlooking the objections, and that the outcome of the case would likely have been different had the objections been made. *See Rhue v. State*, 603 So. 2d 613, 615 (Fla. 2d DCA 1992). Petro Tsingelis' comment concerning the sensitivity of STR testing was based upon his expertise, and was relevant to explain the differences in testing. Defendant cannot demonstrate that the outcome would have been different had counsel objected, given that Melissa Suddeth's testimony established the sensitivity of STR testing. The Court also finds that counsel was not ineffective for failing to object to Melissa Suddeth's testimony on grounds that she used the term "consistent with" as opposed to "match." This witness's testimony was also based upon her expertise. Furthermore, Defendant cannot establish he suffered prejudice from counsel's failure to object to the database used in her calculations, as this witness testified that the database she used is throughout [sic] the scientific community. (See Trial Transcript, pages 581-582, attached). Therefore Defendant is unable to demonstrate, pursuant to *Strickland*, that counsel was ineffective for failing to object or that Defendant suffered prejudice as a result. As such, Defendant is not entitled to relief and ground 2 is denied.

Exh 14: March 27, 2007, Order Granting an Evidentiary Hearing, and Order Denying, in Part, Motion for Post-Conviction Relief at pp. 2-4.

Again, the state court's findings are supported in the record. Petro Tsingelis was qualified as an expert in serology and DNA identification, and was therefore qualified to discuss the relative strengths and weaknesses of the PCR and STR testing techniques. His comments concerning the greater sensitivity of STR testing was based upon his expertise, and was relevant to explain to the jury the differences in testing. (Exh 26: Vol. 5: T 548, 551-552, 556- 557).

Melissa Suddeth, who was qualified as an expert in forensic serology DNA analysis, testified that the database she uses for the STR analysis is a coded system which the Florida Department of Law Enforcement (FDLE) is certified to perform, and that the

database is a national one which is widely used and accepted throughout the scientific community. (Exh 26: Vol. 5: T 578, 581-582).

Graham is unable to show any valid basis for challenging the testimony of the State's two DNA experts. Consequently, defense counsel cannot be deemed ineffective for failing to object to the complained-of testimony. The state court's denial of this ground is objectively reasonable and entitled to deference by this Court pursuant to 28 U.S.C. § 2254(d) and (e).

## GROUND FOUR

Graham alleges trial counsel was ineffective for failing to object to improper character evidence about Graham's cross-dressing. Specifically, Graham refers to evidence introduced by the State at trial that prior to the alleged offenses, Graham was wearing women's clothing. Graham contends at the time of his arrest (soon after the alleged offenses) he was not wearing women's clothing, and that counsel failed to object to the evidence on the grounds that it was irrelevant and prejudicial. Graham raised this claim in ground four of his motion for postconviction relief. The state court properly denied the claim without a hearing for the following reasons:

> In ground 4, Defendant claims that counsel was ineffective for failing to object to improper and irrelevant character evidence. Defendant alleges that counsel failed to object when the State admitted evidence of Defendant's statement to police that he wears women's clothing. Defendant contends that this evidence was irrelevant, improper, and prejudicial.
>
> The State argues in response that the fact that Defendant wore women's clothing was relevant because the perpetrator possessed, wore, and used women's clothing before and during the crime, and disposed of the clothing after the crime. The State also alleges that this evidence was corroborative of the description provided by the victim and her mother. The State claims that this was "relevant" evidence under Fla. Stat. §90.401, as it tended to prove that Defendant was the perpetrator. Finally, the State

contends that Defendant is unable to demonstrate that had counsel raised this objection, it would have changed the outcome of trial.

As previously stated, to show that counsel was ineffective for failing to object, a defendant must show that counsel had no excuse for overlooking the objections, and that the outcome of the case would likely have been different had the objections been made. *Rhue v. State*, 603 So. 2d 613, 615 (Fla. 2d DCA 1992). Review of the record reflects that during trial, the State asked the following question of Detective Berberett concerning his interview of Defendant:

> Q. During your interview with Mr. Graham. did Mr. Graham make any admissions about wearing women's clothing?
>
> A. Yes, he did. He admitted that he wears women's clothing and has done so in the past.

(See Trial Transcript, page 268, attached).The Court agrees with the State and finds that Defendant is unable to demonstrate that counsel was ineffective for failing to object to this evidence on the basis of irrelevance and improper character evidence. Pursuant to Fla. Stat. §90.401, Detective Berberett's statement was relevant, as it related to the issue of whether in fact Defendant was the perpetrator, based upon the evidence and testimony introduced. Furthermore, to the extent that Defendant claims the statement was improper character evidence, the Court disagrees. The testimony from Detective Berberett concerning Defendant's statements was not improper character evidence, but rather, was used to corroborate the descriptions of the events and of the identity of the perpetrator given during witness testimony. Therefore, Defendant fails to demonstrate prejudice, as Defendant is unable to show that had counsel objected, it would have changed the outcome of the trial. As such, Defendant is not entitled to relief and ground 4 is denied.

Exh 14: March 27, 2007, Order Granting an Evidentiary Hearing, and Order Denying, in Part, Motion for Post-Conviction Relief at pp. 6-7.

The state court's conclusion that the result of the proceeding would not have been different had counsel objected to the testimony regarding Graham's cross-dressing is objectively reasonable. Thus, Ground Four must be denied.

Accordingly, the Court orders:

-16-

That Petitioner Graham's petition is denied. The Clerk is directed to enter judgment against Graham and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on March 11, 2010.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record